**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **NAPOLEON CAMPOS** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| **vs.** | § | **CAUSE NO. 3:20-cv-00091** |
| | § | |
| **EAST EL PASO PHYSICIANS'** | § | |
| **MEDICAL CENTER, LLC** | § | |
| | § | |
| *Defendant.* | § | |
| | § | **JURY DEMANDED** |

_____

**PLAINTIFF'S ORIGINAL COMPLAINT**
_____

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Napoleon Campos (hereinafter called "Plaintiff" or "Mr. Campos"), complaining of and about East El Paso Physicians' Medical Center, LLC (hereinafter "EEPPMC" or "Defendant") and for cause of action shows unto the Court the following:

## I.   PARTIES AND SERVICE

1.      Plaintiff Napoleon Campos is a citizen of the United States and the State of Texas and resides in El Paso County, Texas.

2.      Defendant East El Paso Physicians' Medical Center, LLC is a domestic limited liability company doing business in Texas. Defendant may be served with summons by serving Donald H. Burris at 1416 George Dieter, El Paso, Texas 79936.

## II. JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the federal statutory claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiff's causes of action arises under a federal statute, Section 10(b) of the Securities Exchange Action of 1934, 15 U.S.C. 78j(b) and Rule 10b-5 (17 C.F.R. § 240.10b-5).

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court of the Western District of Texas, El Paso Division, as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

### III. FACTS

5.      Plaintiff Napoleon Campos ("Mr. Campos") was hired by EEPPMC in 2014. Mr. Campos completed his fellowship at Foundation Surgical Hospital from 2015-2017 and returned in 2018. On July 1, 2018, Mr. Campos expressed interest to another physician who was invested in Foundation Surgical Hospital. The physician advised Mr. Campos to speak to George (Jorge) Aguirre and Don Burris to inquire about purchasing B shares, if it made sense to him. Mr. Campos reached out to Jorge Aguirre and he agreed to explain the investment and to send Mr. Campos the initial document to review. The following day Jorge Aguirre sent Mr. Campos the class B interest subscription agreement via email.

6.      On July 30, 2018, Mr. Don Burris sent Mr. Campos a text message soliciting his interest in investing in the B shares of East El Paso Physicians Medical Center. Mr. Campos met with Don Burris and Jorge Aguirre for lunch and they discussed how he could potentially triple his investment overnight when HCA.

7.      On August 9th, 2018, Don Burris emailed Mr. Campos a Confidentiality and Nondisclosure Agreement, which Burris asked Campos to sign for him to receive the financial statements he requested from Burris. Mr. Campos returned the signed Confidentiality and

Nondisclosure Agreement and the following day, Don Burris sent him the financial statements for the first half of the year from Jan – July 2018.

8.      Mr. Campos forwarded the financial statements to his accountant, Tom Barker. Mr. Barker requested the Prospectus for the Class B shares so that he could review it and advise me on the investment. From August 17th – September 1, 2018, Mr. Campos repeatedly requested the prospectus from Jorge Aguirre, but failed to receive any response. It was not until September 3rd, when Don Burris proceeded to advise Mr. Campos there was no prospectus via text message.

9.      Campos met with Pauline Motts, the CFO for Foundation Surgical Hospital on or about September 7th. They discussed his possible investment and how secure the hospitals finances were. They also discussed the soundness of the investment and the honesty of the board members and support staff.

10.      Mr. Campos personally delivered a check for $250,000.00 to Pauline Motts in addition to his signed Class B shares subscription agreement on October 5, 2018. Mr. Campos then proceed to send an email to Don Burris and Pauline Motts with his signed investor acknowledgement on October 15, 2018.

11.      In a turn of events, on March 2019, Mr. Jim Wilcox replaced Don Burris as the CEO of Foundation Surgical Hospital. Pauline Motts, CFO also left Foundation Surgical Hospital. Mr. Campos received an email on July 22, 2019 with the subject line "Document to Shareholders" sent by Emma Gonzalez. It stated essentially that all financial statements from 2017 and 2018 that showed the hospital was profitable were, not only deceiving, but flat out forgery. Instead, the hospital lost $15.4 million over that time frame.

12.      Mr. Campos requested a meeting with the new CEO, Jim Wilcox. Ms. Gonzalez scheduled a meeting for July 26, 2019 at 1:00 pm. Mr. Campos received another letter from Emma

Gonzalez titled "Letter to Members," which requested that they sign a petition to restructure the company, essentially liquidating their investments. It was written by Jim Wilcox and represented the board of directors. Mr. Campos did not agree to lose his investment and he refused to sign it. Then on July 26, 2019, Mr. Campos was notified by Emma Gonzalez that Jim Wilcox had canceled their meeting, due to unexpected circumstances that arose.

13.     On July 28th Mr. Campos received a document in the mail stating that the board and a super majority of the members signed the petition and that East El Paso Physicians Medical Center would restructure and be sold to PSN. All B and C Shareholders would have their investments liquidated to pay off debt. The members were promised 19 cents on the dollar starting in a year, with payments spread out over 5 years.

14.     Mr. Burris' attorney sent a certified letter to both Drs. Ibrihim and Scudday dated July 30, 2019. The letter was titled "cease and desist" and threatened legal action against the providers for libel and slander for their emails and personal conversations, which reflected poorly on Don Burris.

## IV. CAUSES OF ACTION

COUNT ONE – FRAUD

15.     Plaintiff Campos realleges and incorporates by reference the material factual allegations set forth in the preceding paragraphs.

16.     The Defendant committed fraud in connection with the purchase and sale of securities. These transactions involved fraud, fraudulent nondisclosure, and/or violations of the securities laws and regulations, as well as the use of both the post service and interstate wire communications.

17.     The Defendant concealed and failed to disclose accurate and true financial records to Plaintiff. The Defendant intentionally misled Plaintiff by providing him with false information in order to induce him into investing in the company. The Defendant made material misrepresentations in its e-mails, telephone calls and other communications to Plaintiff.

18.     The Defendant made misrepresentations—through omission and commission—that it intended to be relied upon by Plaintiff. Plaintiff did rely on the Defendant's misrepresentations. This reliance was reasonable based upon the knowledge available to Plaintiff at the time.  As a result of the Defendant's fraud, Plaintiff has suffered damages.

COUNT TWO – VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THERUNDER BY THE SECURITIES AND EXCHANGE COMMISSION

19.     Plaintiff Campos realleges and incorporates by reference the material factual allegations set forth in the preceding paragraphs.

20.     SEC Rule 10b-5 prohibits fraudulent activity in connection with securities. Specifically, Rule 10b-5 states:

> It shall be unlawful for any person, ***directly or indirectly***, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

*17 C.F.R. §240.10b-5.*

21.     The Supreme Court has held that there are six elements that a plaintiff must allege and prove in order to establish a private civil claim of misrepresentation and/or omission under Section 10(b) and Rule 10b-5:

1.  The defendant made a "material misrepresentation or omission";

2.  the defendant acted with "scienter", or a "wrongful state of mind" (typically understood to mean that the defendant intended to make the material misrepresentation or omission, or acted with recklessness in making the misrepresentation or omission);

3.  the material misrepresentation or omission was made "in connection with the purchase or sale of a security";

4.  the plaintiff who was allegedly victimized by the fraud relied upon the material misrepresentation or omission;

5.  the plaintiff suffered an economic loss as a result of the alleged fraud; and

6.  the plaintiff can allege and prove "loss causation", which means that the allegedly fraudulent misrepresentation or omission caused the plaintiff's economic loss.

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

22.     Defendant, intentionally and knowingly, made material misrepresentations and omissions in connection with the sale and purchase of securities. Plaintiff suffered injury as a result of Defendant's misrepresentations and omissions, and a reliance on the assumption of an efficient market free of manipulation. Defendant's fraud was furthered by its use of the instrumentalities of interstate commerce, the mails, or a facility of the national securities exchange. Plaintiff's damages are caused by Defendant's fraud.

COUNT THREE – TEXAS SECURITIES ACT VIOLATION

23.     Plaintiff Campos realleges and incorporates by reference the material factual allegations set forth in the preceding paragraphs.

24.     Defendant violated §33(A)(2) of the Texas Securities Act in that it offered and sold securities (directly or indirectly) by means of an untrue statement of a material fact and/or by an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

25.     Section 33(A) of the Texas Securities Act specifically states:

> A. Liability of Sellers. (1) Registration and Related Violations. A person who offers or sells a security in violation of Section 7, 9 (or a requirement of the Commissioner thereunder), 12, 23C, or an order under 23A or 23-2 of this Act is liable to the person buying the security from him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security.
> (2) Untruth or Omission. A person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security. However, a person is not liable if he sustains the burden of proof that either (a) the buyer knew of the untruth or omission or (b) he (the offeror or seller) did not know, and in the exercise of reasonable care could not have known, of the untruth or omission. The issuer of the security (other than a government issuer identified in Section 5M) is not entitled to the defense in clause (b) with respect to an untruth or omission (i) in a prospectus required in connection with a registration statement under Section 7A, 7B, or 7C, or (ii) in a writing prepared and delivered by the issuer in the sale of a security.

*TEX. REV. CIV. STAT. ANN. art. 581-33.*

26.     Defendant was involved in the purchase, sale and issuance of securities using fraudulent means and communications as outlined above in direct violation of the civil penalty provisions of the Texas Securities Act.

27.     As a result, Plaintiff sustained damages, including the loss of his entire investment in the company. Plaintiff is entitled to appropriate remedies under the Texas Securities Act from the Defendant.

COUNT FOUR – UNJUST ENRICHMENT

28.     Plaintiff Campos realleges and incorporates by reference the material factual allegations set forth in the preceding paragraphs.

29.     Additionally and/ or in the alternative to other counts, Plaintiff pleads for recovery under the doctrine of unjust enrichment. Plaintiff paid monies to the Defendant for shares believing the price asked for by the Defendant represented the shares' true value and was not the result of the Defendant's manipulation and market fraud. As a result of the Defendant's acts and omissions, the Defendant has unjustly enriched itself and owes restitution to Plaintiff in the amount of all monies paid to the Defendant.

## V.  DAMAGES

30.     Plaintiff Campos realleges and incorporates by reference the material factual allegations set forth in the preceding paragraphs.

31.     Plaintiff has sustained damages as a result of Defendant's actions described herein. Accordingly, Plaintiff is entitled to an award of actual and compensatory damages in an amount that exceeds the minimum jurisdictional limits of this Court, including, but not limited to: mental anguish and emotional pain and suffering in the past and future; together with pre-judgment and post-judgment interest as allowed by law.

32.     Exemplary damages are appropriate in this case. Exemplary damages are needed to deter the Defendant and others from such conduct in the future. The Defendant acted knowingly and willfully. Its conduct was deliberate and organized and amounts to multiple violations of felony criminal statutes, including mail fraud, wire fraud, violations of SEC rules and regulations, and violations of the Financial Industry Regulatory Authority ("FINRA") rules and regulations. *See* 17 C.F.R. § 240.10b-5 (SEC Rule 10b-5 prohibiting fraud in connection with the purchase or

sale of securities); 15 U.S.C. § 77q (Section 17 of the Securities Act of 1933); 18 U.S.C. § 1346 (mail fraud and wire fraud); FINRA Conduct Rule 2310 (prohibiting unsuitable recommendations of securities sales or purchases).

33.     Pursuant to Section 41.008 of the Texas Civil Practice and Remedies Code, the amount of exemplary damages awarded to Plaintiff should not be limited because the Defendant engaged in forgery, engaged in commercial bribery, and secured the execution of documents by deception.  The Defendant acted intentionally and knowingly.

34.     Additionally, as a result of Defendant's above-described actions and/or omissions, Plaintiff was required to retain counsel.   Accordingly, Plaintiff also seeks compensation for attorney's fees, as well as out-of-pocket expenses and costs.

## VI.  JURY DEMAND

35.     Plaintiff demands a trial by jury and paid the jury fee when they filed their Original Complaint.

## VII.  PRAYER

For the reasons set forth above, Plaintiff Napoleon Campos respectfully prays that the Defendant be cited to appear and answer herein, and for the following relief:

a.   a judgment in Plaintiff's favor on all claims asserted in this complaint;

b.   compensatory damages;

c.   pre-judgment and post-judgment interest as permitted by law;

d.   reasonable attorney's fees and costs; and

e.   for such other and further relief to which Plaintiffs may show himself to be justly entitled.

Respectfully Submitted,



By: _____

Alfonso Kennard, Jr.
Texas Bar No. 24036888
2603 Augusta Drive, Suite 1450
Houston Texas 77057
(713) 742-0900 main
(713) 742-0951 facsimile
Email: alfonso.kennard@KennardLaw.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS NAPOLEON CAMPOS**

**CO-COUNSEL FOR PLAINTIFF:**



Kevin T. Kennedy
Texas Bar No. 24009053
Southern District No. 305324
2603 Augusta Drive, Suite 1450
Houston, Texas  77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
kevin.kennedy@kennardlaw.com